## Cheltenham Township *v.* Philadelphia Rapid Transit Co., Appellant.

*Road law — Maintenance of township roads — Contract with street railway company—State highways—Act of May 31, 1911, P. L. 468.*

1. A township is merely an agency of the Commonwealth to maintain its highways, and when the State takes over certain of them, the township's control and supervision over them, and rights therein, cease.

2. Where a contract between a township and a street railway company provides that the latter shall maintain good and sufficient passageways across the highways at the intersections of various township roads, and the Commonwealth takes over the highway as a state highway, the Commonwealth, under the express terms of the Act of May 31, 1911, P. L. 468, succeeds to the rights of the township under the agreement, and the township has no standing in equity to enforce the agreement.

3. In such case the rule that an action on an assigned contract must be brought in the name of the assignor, does not apply.

4. The Act of May 31, 1911, P. L. 468, is not confined to those contracts only where the street railway must maintain the entire

highway. It applies also to those where passageways across a highway are to be maintained.

5. The Act of 1911, does not abrogate such contracts; it merely turns them over to the State.

Argued January 24, 1928.. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 89, Jan. T., 1928, by defendant, from decree of C. P. Montgomery Co., June T., 1923, No. 6, on bill in equity, in case of Cheltenham Township v. Philadelphia Rapid Transit Co. Reversed.

Bill for specific performance. Before WILLIAMS, P. J. The opinion of the Supreme Court states the facts. Decree for plaintiff. Defendant appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Thorpe Nesbit,* with him *Franklin L. Wright, Coleman J. Joyce* and *George H. Huft,* for appellant.—A township cannot enforce against a street railway company a covenant in a consent or franchise agreement to repair road crossings, the road in question having been taken over by the State and established as a state highway, in the face of section 5 of the State Highway Act of May 31, 1911, P. L. 468, which provides that the State shall succeed to all the rights of the township under such consent or franchise agreement.

The law relating to assignments at common law has no application to this case: U. S. v. Buford, 3 Pet. 12.

Section 5 of the State Highway Law does not operate as an assignment but effects a complete novation.

Section 5 of the statute applies to agreements for the maintenance of a part as well as the whole area of any state highway: Com. v. Twp., 276 Pa. 172.

*Aaron S. Swartz, Jr.,* with him *John M. Dettra* and *Samuel H. High,* for appellee, cited: Isman v. Nieder-

man, 74 Pa. Superior Ct. 175; Com. v. Twp., 276 Pa. 172.

Opinion by Mr. Justice Schaffer, March 12, 1928:

The Township of Cheltenham, when it granted consent to the Philadelphia, Cheltenham and Jenkintown Passenger Railway Company to operate on Old York Road, incorporated in the agreement an undertaking on the part of the railway company "To maintain at the intersection of every township road in Cheltenham Township a good and sufficient, safe and smooth passageway across said Old York Road of the width of the intersecting road." Philadelphia Rapid Transit Company, the appellant, has succeeded to all the rights and assumed all the obligations of the Philadelphia, Cheltenham and Jenkintown Passenger Railway Company. In this proceeding the Township of Cheltenham seeks to compel specific performance by appellant of the above recited undertaking to maintain good and sufficient passageways across Old York Road at the intersections of the various township roads and the court below granted the relief prayed for. Appellant challenges this conclusion on the ground that the right to enforce the contract has passed from the township to the Commonwealth due to the fact that Old York Road has become a state highway and the Act of May 31, 1911, P. L. 468, provides (section 5) : "That where an agreement or contract exists between any street railway company......and any ......township......the terms of which require said street railway company......to maintain any highway which is designated under this act as a State Highway, the said agreement shall remain in force, and the State shall succeed to and take over to itself all the rights of said......township......existing under said agreement or contract. The said street railway company ......shall be bound to carry out all the requirements, and comply with all the terms and conditions of said agreement with the State, the same as though the said

contract or agreement had been originally made between the State and said street railway company......" The court below determined notwithstanding this statute that the township can enforce the contract; with this we are unable to agree.

We think the court below and appellee's counsel, in reaching their conclusions, have not given adequate weight to the relation between the Commonwealth and the township. The latter is but an agency of the State to maintain its highways: Com. v. Bird, 253 Pa. 364; Com. v. Lehigh Coal & Navigation Co., 285 Pa. 551, 555, and when the State took over certain of them, including Old York Road, the township's control and supervision over them and rights therein ceased: Com. v. Lehigh Coal & Navigation Co., 285 Pa. 551; Erie R. R. Co. v. Public Service Commission, 77 Pa. Superior Ct. 196. The State by its legislative enactment which we have quoted, in its sovereign capacity said to its creature the township, that the agreement which the latter had made with the street railway company to maintain part of the highway of Old York Road (that part of Old York Road where township roads intersect it is part of Old York Road) shall remain in force and I, the State, shall forthwith succeed to and take over to myself all the rights which you, my agent, the township, possessed under the agreement as though it had been originally made with me. Under the plain language of the act, the conclusion is inescapable that the contract passed over to the State and we so held as to a contract of like character in Com. v. Newton Twp., 276 Pa. 172.

But says appellee's able advocate who argued the case at our bar, even though the Township of Cheltenham may have no further concern or interest in the contract, it is still the party to the original agreement and defendant cannot object to it as a party plaintiff and he cites authorities supporting the proposition that an action at common law on an assigned contract must be brought in the name of the assignor. This, however, is

not an assigned contract but one which passes to the State by the operation of its sovereign will on its agent. The Commonwealth has declared that the contract is now as though it had been "originally made between the State and said street railway company." It would be inappropriate in this age to apply the strictly formal rules of the common law as to parties to an action, to a situation such as that before us, and to hold that the township can enforce a contract in which it now has no interest whatever. The rule that assignors must bring suit had largely as its basis the principle that at common law choses in action were not assignable and this of course is now changed. The effect of the Act of 1911 is not to work an assignment of the contract but to substitute the State for the township as a party to the agreement.

Another argument advanced by appellee is that the Act of 1911 does not apply to this particular contract, that the act vests in the State only those contracts whereby the street railway is to maintain the entire highway, whereas the one before us provides merely for the maintenance of passageways across the highway. We cannot subscribe to such a narrow construction of the act. When the State by the Sproul Act took over such roads as state highways, it did so in a broad and plenary way and set in motion one of the Commonwealth's greatest undertakings. It would never do to hold that its control is not absolute and may be broken or interfered with at the intersection of every township road with one of its highways. The effect of this might be to emasculate the whole state highway scheme. The Superior Court properly determined in Township of Middleton v. Weary, 78 Pa. Superior Ct. 503, that township roads became county roads under a cognate piece of legislation, the Act of May 11, 1921, P. L. 244, and its supplements, freed from township control and we conclude that the State has single and supreme control over all and every part of a state highway which it has

taken over in pursuance of the State Highways Laws. It may well be that the highway department of the State does not wish passageways to be maintained across state highways by street railway companies; however this may be it is for the Commonwealth to say, not the township.

It is also contended that the State cannot abrogate the contract, that its abrogation would be invalid under section 9, article XVII, of our Constitution providing for municipal consent as a prerequisite to the construction of a street railway therein. As to this it is sufficient to say that the contract is not abrogated, it is simply turned over to the State, the parens patriæ of the township.

The decree of the court below is reversed and plaintiff's bill is dismissed at its cost, without prejudice to any right which the municipality may have to seek relief through the Commonwealth.