Bernadette CRIGLER

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 1995.

Decided Nov. 15, 1995.

---

Alan C. Ostrow, Deputy City Solicitor, for appellant.

Bruce W. Miller, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The City of Philadelphia (City) appeals an order of the Philadelphia County Court of Common Pleas granting Bernadette Crigler's motion for summary judgment, denying the City's motion for summary judgment and entering a $35,000 verdict in favor of Crigler.

In November 1990, Crigler filed a complaint against the City for injuries sustained in October 1989 when she fell because of a pothole on the crosswalk of Fisher Lane, approximately ten feet from the vehicular traffic area of Broad Street, which intersects Fisher Lane. Fisher Lane is a City street and Broad Street is a Commonwealth of Pennsylvania (State) highway.

The City's sole argument in this appeal is that Crigler cannot recover from the City because the site of her fall is not part of a City Street, but is actually part of Broad Street, which the State is responsible for maintaining. It cites *Ruch v. City of Philadelphia*, 138 Pa.Cmwlth. 68, 587 A.2d 830 (1991), *petition for allowance of appeal denied*, 529 Pa. 660, 604 A.2d 251 (1992), for the proposition that a State highway right-of-way includes the outermost line of the sidewalk if the sidewalk line were to be extended across the intersection. It contends that Crigler fell precisely within that area.

Crigler responds that she fell within the curb lines of Fisher Lane, some ten feet away from Broad Street and not within the extended curb lines of Broad Street. She maintains that, as in *Ruch*, the State would be liable for any defect in a State highway from curb line to curb line, including the intersection with a City street in that portion of the intersection used for vehicular traffic. She argues that here, by contrast, she fell because of a pothole outside the existing Broad Street curb lines, but clearly within the curb lines of Fisher Lane.

We resolve this case as follows. This Court held in *Ruch* that a City is not liable for an accident where the site of the relevant defect is on the vehicular portion of a State highway between curb lines, including the vehicular intersection with a City street. The conclusion there was based on the following propositions. The State's maintenance obligation for State highways it has taken, such as Broad Street, "*shall be limited* to that part of the street or section thereof *between curb lines* as established at the time of passage of this act ..." Section 204

of the State Highway Act of 1961 (Act), Act of September 18, 1961, P.L. 1389, art. II, § 204, 36 P.S. § 1758–204 (emphasis added). Similarly, its maintenance obligation is limited to "the portions of the street *between existing curb lines available to vehicular traffic.*" 36 P.S. § 1758–205 (emphasis added). "Curbline" is defined as "[a] line formed by the face of the existing curb or in its absence the outer edge of the shoulder, along which curbing is or may be located." 67 Pa.Code § 441.1. The State's control of its highways may not "be broken or interfered with at the intersection of every township road with one of its highways." *Cheltenham Township v. Philadelphia Rapid Transit Co.,* 292 Pa. 384, 388, 141 A. 259, 260 (1928).

█ In this case, it is undisputed that the site of the defect was in an area available to vehicular traffic, but that the site was some ten feet away from the Broad Street traffic area and between the curb lines of Fisher Lane, a City street, not between the curb lines of Broad Street. The State is responsible for maintaining only those vehicular areas on its streets *between curb lines.* 36 P.S. § 1758–205. The crosswalk on Fisher Lane is not "between existing curb lines available to vehicular traffic" on Broad Street; it is beyond "the outer edge of the shoulder, along which curbing ... may be located" on Broad Street. Thus, under the law cited in *Ruch,* the State would have no liability here.

The City's argument to the contrary is based on the following statement in *Ruch:*

Although the parties have not pursued the point, we note that the defect's site in this case—although clearly located between curb lines, as we hold above—is also at a point on the roadway which would lie between the parallel outer lines of the [State highway] sidewalks if those sidewalk lines were to be extended across the intersection. Nevertheless, the [S]tate's responsi-

bility still attaches to that location, when one recognizes that the site is still within the [State highway] *right-of-way lines* (i.e., the outermost lines of the public easement) adopted pursuant to the statutory adoption of the "street" under the Act.

*Id.,* 587 A.2d at 832 (emphasis in original). The City suggests from this statement that the State's liability for the Broad Street intersection extends to and includes the area where the Broad Street sidewalk would be were it not intersected by Fisher Lane, i.e., the crosswalk from one side of Fisher Lane to the other.

While the statement quoted above could be considered dictum, since it is introduced by the phrase "[a]lthough the parties have not pursued the point, we note ...," and while the statement is not necessary to the holding in that case, the City's interpretation of it is certainly reasonable.[1] Nevertheless, the holding in *Ruch* was that the particular roadway area in question *was between the actual curb lines* of the State highway and, therefore, the State's responsibility. The statement on which the City relies in fact reiterates that the site there was "clearly located between curb lines." Thus, it is immediately apparent that the case before us is factually distinguishable from *Ruch.*

Moreover, the statement in *Ruch* is by its own terms limited to the particular facts in that case. The statement pertained to *"the defect's site"* and recognized that the State's responsibility attached to *"that location"* because the *"site"* was still within the State highway right-of-way. As the trial court and Crigler have accurately pointed out, the defect's site in *Ruch* was quite specific. It existed within the "rounded-base pie shape, created by the curved arc of curbing and the intersection of the extended straight curb lines," i.e., where the corner of the sidewalk would be were the corner square instead of rounded. *Id.* at 831.[2] The "sole issue" in

---

1. Indeed, the City correctly argues that the Honorable David W. Craig, who authored this Court's opinion in *Ruch,* subsequently wrote for this Court in an unreported opinion wherein he confirmed the City's interpretation. *Gilliard v. City of Philadelphia,* 161 Pa.Cmwlth. 710, 637 A.2d 1377 (1993). Although we ordinarily decline to address any arguments based on unre-

ported opinions in other cases, we would be remiss under the circumstances if we did not acknowledge *Gilliard.* Of course, the unreported decision there provides no binding precedent.

2. If there were a sidewalk at the specific site, within "the intersection of the extended straight curb lines," instead of the vehicular cartway due

*Ruch* was responsibility for that specific site. *Id.*

In light of the foregoing discussion, we decline to read *Ruch* as holding that the State is responsible for maintaining those areas that are outside the curb lines of a State highway, are between curb lines of a City street, extend across the City street and are within imaginary sidewalk lines. Such a holding would be contrary to the very law cited and relied upon in *Ruch* and raised in this case, e.g., the express statutory limitation of the State's maintenance liability to areas "between curb lines." 36 P.S. § 1758–204. We did hold in *Ruch* that the State may be liable for the vehicular cartway between curb lines of a State highway, unbroken by vehicular intersections with City streets and including particular vehicular areas between actual curb lines—within a "rounded-base pie shape, created by the curved arc of curbing and the intersection of the extended straight curb lines"—where there might otherwise be the square corner of a raised sidewalk. The defect in this case was not in any of those areas, but was between the curb lines of Fisher Lane, a City street.

We trust that our interpretation of *Ruch* and the law that we now set forth are relatively uncomplicated, practical, logical, realistic, certain and easily applied. In sum, absent an agreement on maintenance at an intersection of a City street and a State highway, the State is responsible for maintaining only that portion of the vehicular intersection between actual or extended curb lines of its highway, without any reference to sidewalks; the City is responsible for maintaining crosswalks and other areas up to the actual or extended curb lines of the State highway at the vehicular intersection.[3]

The trial court here essentially applied this law and declined to relieve the City of liability where the pothole on Fisher Lane was approximately ten feet outside the traffic area, or extended curb lines, of Broad Street and certainly not between the actual curb lines of Broad Street.[4]

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 15th day of November, 1995, the order of the Court of Common Pleas of Philadelphia County, at November Term 1990 No. 4402, dated March 20, 1995, is hereby affirmed.

---

to the rounded edge of the sidewalk, the State would have been relieved by the Act from maintaining that limited non-vehicular portion of sidewalk. 36 P.S. § 1758–205.

3. Where relevant points lie between both actual curb facings of a State highway and extended curb lines of the highway, the actual curb facings are the "curb lines" for purposes of determining that areas are "between curb lines." *Ruch.*

4. It is axiomatic that, where the State's maintenance responsibility ends at the intersection with a City street, the City's begins. Irrespective of what the boundaries of the State's "right-of-way" for its highways may be or what the extent of the "public easement" to which we referred in *Ruch* is, it is certain and statutorily mandated that the State has no obligation to maintain crosswalks outside the curb lines of the State highway. Nei-

ther party suggests, and no law supports such a notion, that pedestrian or vehicular areas within the State's right-of-way for which the State expressly has no maintenance duty constitute a "no-man's land" wherein no entity has responsibility for maintenance. Again, the City argues here that the State, not it, is responsible for the area in question. Its sole contention in support of its disavowal of liability is based on *Ruch*, which held that, at the intersection of a City street and a State highway, the State, as opposed to the City, would be liable for the street defect at the particular site in that case. Therefore, our determination in this case that the State would have no responsibility for defects at the site involved here compels us to reject the City's appeal.